UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| HILARY PALENCAR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:15-cv-00371-JDL |
| | ) | |
| BRENDA THERIAULT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDED DECISION AFTER SCREENING COMPLAINT
PURSUANT TO 28 U.S.C. § 1915(e)**

In this action, Plaintiff Hilary Palencar, a resident of Pennsylvania, asserts claims against her former Maine-resident landlords, who rented an apartment to Plaintiff in Madawaska, Maine, and against state officers involved in the administration of the section 8 voucher program in Maine. Plaintiff originally filed this action in the District Court for the Middle District of Pennsylvania. After granting Plaintiff's motion to proceed in forma pauperis (ECF No. 3), the Pennsylvania court ordered the matter transferred to this District (ECF No. 9).

Given that Plaintiff is proceeding in forma pauperis, Plaintiff's complaint is subject to preliminary review to determine whether, and to what extent, Plaintiff has stated a claim for which relief may be granted.  28 U.S.C. § 1915(e). [1]  As explained below, following a review of the complaint, I recommend that the Court dismiss the action without service.

**Background**

The following facts are derived from the allegations contained in Plaintiff's complaint, which allegations are taken as true for purposes of the section 1915(e) review.

---

[1] When a party is proceeding in forma pauperis, "the court shall dismiss the case at any time if the court determines," inter alia, that the action is "frivolous or malicious" or "fails to state a claim on which relief may be granted."  28 U.S.C. § 1915(e)(2)(B).

Plaintiff Hilary Palencar is a disabled individual who resides in Pennsylvania. She is a participant in the federal section 8 voucher program and asserts her claims under the Fair Housing Act, 42 U.S.C. §§ 3601 et seq., and the Americans with Disabilities Act, 29 U.S.C. § 794. (Complaint ¶ 1, ECF No. 1.)

In October 2014, Plaintiff decided to relocate to Maine. (*Id.* ¶ 6.) On or around October 15, 2014, Plaintiff saw an ad on the *St. John Valley Times* website for a non-smoking apartment. (*Id.* ¶ 7.) The apartment was located in Madawaska, Maine. She called to inquire and spoke with Defendant Brenda Theriault. Plaintiff "made clear her personal requirements as a disabled woman" because she worried whether it was advisable to move so far from Pennsylvania given her limited means and age. (*Id.*)

During ensuing discussions with Defendant Brenda Theriault or her husband, Defendant Keith Theriault, Plaintiff revealed that her disability is based on post-traumatic stress disorder (PTSD). (*Id.* ¶ 8.) Plaintiff asked whether the other tenant in the building was a smoker or had "extensive sound equipment." (*Id.*) Evidently, she was advised that the upstairs tenant and location would not present problems. As part of her investigation, Plaintiff also looked at Google maps and told the Theriaults that she hoped to be able to walk to banks and supermarkets. (*Id.* ¶ 9.) The Theriaults informed Plaintiff that they were willing to rent the premises to Plaintiff. (*Id.*) Following numerous e-mail communications between Plaintiff and the Theriaults, Plaintiff agreed to rent the apartment. (*Id.* ¶ 11.)

On her way to Madawaska, Plaintiff stopped in Augusta to meet with Defendant Sue O'Clair at the central office of MaineHousing. (*Id.* ¶ 14.) According to Plaintiff, Defendant O'Clair was unhappy that she had to meet with Plaintiff and made that known to Plaintiff. (*Id.*) Plaintiff alleges that "in this first meeting and afterward, [Defendant] O'Clair discriminated against

out-of-state, psychologically disabled plaintiff, rushing her, diminishing her, treating her as of no account."  (*Id.*)   In comparison, Brenda Chabre, another MaineHousing employee and not a defendant in this action, treated Plaintiff well.  (*Id.*)

Plaintiff arrived in Madawaska on October 31, 2014.  (*Id.* ¶¶ 11, 16.)  She immediately noted that the apartment was located within several hundred yards of the Twin Rivers Mill.  (*Id.* ¶ 16.)  She also believed that there was a "180-degree change in Brenda Theriault's demeanor in general."  (*Id.*)

In November 2014, Defendant Colin Walls, a housing inspector for MaineHousing, inspected the apartment.  Defendant Walls "failed" the apartment and scheduled a re-inspection for December.  (*Id.* ¶ 17.)  Defendant Walls also "twice refused to give [Plaintiff] his full name, owing to [his] antipathy to her."  (*Id.* ¶ 18.)   On two occasions in November and December, Plaintiff was without heat due to furnace maintenance or an empty oil tank.  (*Id.* ¶ 21.)  Plaintiff was upset and sought assistance from crisis intervention because of "the toll of being deceived outright or treated as less than human."  (*Id.* ¶ 22.)

Meanwhile, Plaintiff attempted to get assistance from MaineHousing, but, Plaintiff maintains, Defendant O'Clair had no time for her.  (*Id.* ¶ 23.)  Plaintiff insisted that MaineHousing provide her with a contact person other than Defendant O'Clair.  MaineHousing then "replaced" Defendant O'Clair with Defendant Allison Gallagher. (*Id.* ¶ 24.)  All future contact that Plaintiff had with MaineHousing was with Defendant Gallagher.  Plaintiff's attempt to contact Defendants Denise Lord and John Gallagher were unsuccessful.  (*Id.* ¶ 25.)

Out of fear that her apartment would not pass inspection in December, Plaintiff wrote a check in the amount of $500 payable to Defendant Keith Theriault.  "[Defendant] Theriault had begun to allude" that Plaintiff bore some financial responsibility due to the inspection and re-

inspection.  He also "expressed inordinate interest in Plaintiff's 2002 Subaru."  However, Plaintiff did not "offer any monies other than for new smoke detectors."  (*Id.* ¶ 26.) [2]

In December, Defendant Walls concluded that the apartment passed inspection.  (*Id.* ¶ 27.) Plaintiff was not present for the inspection because she could not endure "another dehumanizing encounter with yet another MaineHousing employee."  (*Id.*)  Consequently, Defendant Walls did not have the opportunity to learn of problems that Plaintiff discovered with the apartment, including the fact that the main plumbing drain did not work properly.  (*Id.* ¶ 29.)  Instead, Plaintiff kept the information confidential with Keith Theriault, who promised to remedy the problem after the inspection.  (*Id.* ¶ 30.)

Plaintiff also asserts that in December, Keith Theriault learned that he could charge more than $500 for the apartment, based on HUD's rental rates for Aroostook County.  He then had Plaintiff sign a new lease.  Plaintiff paid $178 for her share of December rent, even though she had already given Defendants Theriault a check in the amount of $500.  (*Id.* ¶ 27.)

When Plaintiff requested material to cover her bathroom window in December due to the cold and for privacy, Brenda Theriault informed Plaintiff the Theriaults had done enough and would do no more for Plaintiff; she instructed Plaintiff to stop placing calls to Keith Theriault's workplace (the Mill) due to the annoyance of his coworkers.  (*Id.* ¶ 31.)  Plaintiff believed that Brenda Theriault insinuated that Plaintiff has a "clandestine motive" in calling Keith Theriault and that she had "designs" on him.  (*Id.* ¶¶ 31, 32.)  On this basis, Plaintiff concluded that Brenda Theriault was suggesting that she "could toy with Plaintiff's nascent reputation in the community," with the objective of "open[ing] Plaintiff's wallet."  (*Id.* ¶ 32.)  "Reputation meant everything to Plaintiff, and, with no tribute money forthcoming, Brenda Theriault seemed very aware of the hay

---

[2] By monies, Plaintiff appears to mean cash.

4

to be made by suddenly using reputation as a bargaining chip." (*Id.* ¶ 32.) Plaintiff brought the matter to Defendant Allison Gallagher's attention. (*Id.* ¶ 33.) Following their conversation, Defendant Gallagher sent Plaintiff a "no-questions-asked" section 8 voucher permitting her to leave Maine (described by Plaintiff as a "port package"). (*Id.*) This occurred within two weeks of the December inspection. (*Id.*)

In January, Keith Theriault went to the apartment in response to Plaintiff's report of a dripping bathroom sink. According to Plaintiff, he failed to fix the sink but "nearly set[] the house on fire … by stuffing Plaintiff's foam rubber pillows [around a] poorly-sheathed electrical stove exhaust to keep out the frigid below-zero air." (*Id.* ¶ 40.) At some point, a local contractor "worked ceaselessly with an augur" in an attempt to fix the drain. (*Id.* ¶ 44.) Plaintiff also experienced significant car troubles in January that the Theriaults' "mechanic friend" failed to fix. (*Id.* ¶ 41.)

At some point, Brenda Theriault suggested to Plaintiff that she go to the hospital to get a doctor's note recommending that she leave the area. (*Id.* ¶ 42.) Plaintiff went to the hospital for that purpose and learned of a new health condition that added to her concerns and caused her to write a will leaving all of her possessions ("including the Subaru Forester Keith Theriault had his eye on") to her upstairs neighbors. (*Id.*) For several reasons, on February 18, Plaintiff determined that she had to leave for her safety. (*Id.* ¶ 28.)

Plaintiff complains that MaineHousing's agents failed to demonstrate appropriate concern for the fact that she had spent down her special needs trust, was not a "jet-setter," had a 13 year old car, was not "equipped to hit the road," and was in need of professional psychological services. (*Id.* ¶ 33.) According to Plaintiff, she waited until February to leave Maine due to the excessively hard winter. (*Id.*)

Ultimately, Plaintiff returned to Pennsylvania.  Her transition to section 8 housing was delayed because MaineHousing conveyed to the Scranton Housing Authority a negative reference authored by the Theriaults.  (*Id.* ¶ 36.)  Before she obtained an offer of housing in Scranton, Plaintiff was required to attend a hearing about her fitness for tenancy.  (*Id.*)  When the Scranton authority eventually offered Plaintiff housing, it was "too late."  (*Id.* ¶ 37.)  By that time, Plaintiff was "living beyond her means" in the lake resort region of Pennsylvania.  (*Id.*)

In her plea for relief, Plaintiff requests an injunction directing Defendants not to report to any subsidized housing developer or housing authority "anything other than that she was a Madawaska resident from October 31, 2014, through February 18, 2015 who paid her rent." Additionally, Plaintiff requests damages in the amount of $20,000, which she describes as "the approximate amount lost to the Trust by the move to Madawaska, return to Pennsylvania, and loss of all possessions given to charity and others. (*Id.* at p. 17.)  Plaintiff also seeks an award of punitive damages from certain MaineHousing employees.  (*Id.* at p. 18.)

### Discussion

In forma pauperis cases are subject to sua sponte dismissal for failure to state a claim. *Jones v. Bock*, 549 U.S. 199, 215 (2007).  "A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief."  *Id.*  "Dismissals [under § 1915] are often made *sua sponte* prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering such complaints."  *Neitzke v. Williams*, 490 U.S. 319, 324 (1989); *see also Mallard v. U.S. Dist. Ct. S.D. Iowa*, 490 U.S. 296, 307-308 (1989) ("Section 1915[e], for example, authorizes courts to dismiss a 'frivolous or malicious' action, but there is little doubt they would have power to do so even in the absence of this statutory provision.").

Plaintiff asserts discrimination in housing in violation of federal law.  Specifically, Plaintiff asserts discrimination under the Fair Housing Act[3] and the Americans with Disabilities Act.

## A.      The Fair Housing Act

The Fair Housing Act prohibits discrimination in the sale or rental of a dwelling, or in the terms, conditions, or privileges of sale or rental, or in the provision of services or facilities in connection with a dwelling, because of a handicap.  42 U.S.C. § 3604(f).  The Act "contemplates three types of claims for perceived discrimination: disparate treatment, disparate impact, and failure to make reasonable accommodations."  *Astralis Condo. Ass'n v. Sec'y, U.S. Dep't of Hous. & Urban Dev.*, 620 F.3d 62, 66 (1st Cir. 2010) (internal quotation marks omitted).  In addition, the Act makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, … any right granted or protected by section … 3604 … of this title."  42 U.S.C. § 3617.

Plaintiff apparently attempts to assert a claim based on disparate impact.  To state and prevail on a disparate impact claim, a plaintiff must allege that a facially neutral policy serves to disadvantage a particular minority.  *Cf. Prescott v. Higgins*, 538 F.3d 32, 41 (1st Cir. 2008) (describing disparate impact claims in the employment context).  Plaintiff fails to make any allegations that could reasonably be construed to support such a claim.

In addition, to the extent that Plaintiff seeks to assert a claim based on Defendants' failure to accommodate, Plaintiff's claim fails.  To assert a failure to accommodate claim, a plaintiff must allege that she sought an accommodation for her particular disability that was needed to permit her to "use and enjoy the housing in question," and that her request was denied.  *Astralis Condo. Ass'n*

---

[3] Sometimes referred to as the Fair Housing Amendments Act.

*v. Sec'y, U.S. Dep't of Hous. & Urban Dev.*, 620 F.3d 62, 67 (1st Cir. 2010). Plaintiff does not make such assertions in her complaint.

Finally, Plaintiff has not asserted a disparate treatment claim. A plaintiff who asserts a disparate treatment claim must demonstrate both disadvantageous treatment and "an impermissible, disability-based discriminatory purpose." *Batista v. Cooperativa De Vivienda Jardines De San Ignacio*, 776 F.3d 38, 44 (1st Cir. 2015). In other words, the defendant must have purposefully engaged in harmful housing-related conduct that was motivated by discriminatory animus toward the plaintiff based on her disability. *Id.* As explained below, Plaintiff has failed to allege facts that would support a claim against any of the Defendants.

### 1.   *Theriault defendants*

In her complaint, Plaintiff alleges that Defendants Theriault misrepresented the location of the apartment, failed to address certain deficiencies in the apartment, provided an unsafe living environment, and made reports to MaineHousing that adversely impacted MaineHousing's response to Plaintiff's concerns. The allegations are insufficient to sustain a discrimination claim. That is, Plaintiff has failed to allege any facts that, if proven, would establish that the alleged conduct of Defendants Theriault was motivated by a "disability-based discriminatory purpose." *Id*. A disabled person's allegation of mistreatment, without any facts from which one could conclude that the mistreatment was motivated by a disability-based discriminatory purpose, cannot sustain a discrimination claim. *Manuel v. City of Bangor*, 691 F. Supp. 2d 212, 216 (D. Me. 2010) (dismissing FHA claim of race discrimination in the absence of factual allegations "supporting the [plaintiffs'] assertion … that any of the [defendant's] actions were related to race"); *Avgerinos v. Palmyra-Macedon Cent. Sch. Dist.*, 690 F. Supp. 2d 115, 130 (W.D.N.Y. 2010) (dismissing claim of age discrimination where complaint provided no suggestion of discriminatory comment, overtly

discriminatory conduct, or disadvantageous treatment compared to others); *Burwell v. Peyton*, No. 5:12-CV-00166, 2013 WL 1386290, at *6 (D. Vt. Apr. 4, 2013) ("Even though there is a reasonable inference that the Defendant Officers were aware of Mr. Burwell's race … there are no factual allegations that make it plausible that such knowledge of his race was a motivating factor in their actions."); *Williams v. Calderoni,* No. 1:11-cv-03020, 2012 WL 691832, at *7 (S.D.N.Y. Mar. 1, 2012) ("[I]t is hornbook law that the mere fact that something bad happens to a member of a particular racial group does not, without more, establish that it happened because the person is a member of that racial group.").

### 2.    *MaineHousing defendants*

Plaintiff also alleges that several employees or agents of MaineHousing mistreated her in a variety of ways. [4]  Plaintiff's allegations include the individuals' incivility, failure to respond to some of Plaintiff's attempts to contact them, and the failure to conduct a proper inspection of the apartment.  Plaintiff has not, however, alleged facts that would support a finding that the alleged mistreatment was the result of a "disability-based discrimination." *Batista*, 776 F.3d at 44

### B.    Americans with Disabilities Act

The Americans with Disabilities Act (ADA) "forbids discrimination against persons with disabilities in three major areas of public life: employment, which is covered by Title I of the statute; public services programs and activities, which are the subject of Title II; and public accommodations, which are covered by Title III." *Bd. of Tr. of Univ. of Ala. v. Garrett,* 531 U.S. 356, 372 (2001).  Plaintiff has failed to state a claim under the ADA.

---

[4] "Under some circumstances, public housing officials can be personally liable for violations of § 3604." *Wiesman v. Hill*, 629 F. Supp. 2d 106, 112 (D. Mass. 2009) (citing *Meadowbriar Home for Children, Inc. v. Gunn,* 81 F.3d 521, 531 (5th Cir. 1996)); *See also Chavez v. Aber*, No. 3:15-cv-00068, 2015 WL 4724807, at *8 (W.D. Tex. Aug. 8, 2015) ("courts across the country have routinely imposed individual liability for discriminatory actions under the FHA") (collecting cases).  To establish liability, however, a plaintiff must demonstrate that the official was in a position to "directly effectuate the alleged discrimination."  *Meadowbriar*, 81 F.3d at 531.

### 1.    *Theriault defendants*

Title III of the ADA essentially "mirrors the FHA in all material respects." *McCree v. Lexington Village Apartments,* No. 2:08-cv-14185, 2010 WL 931859, *6 (E.D. Mich. Mar.11, 2010).  Title III provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).  As explained in the context of Plaintiff's FHA claim, Plaintiff has not alleged facts that could support a discrimination claim against Defendants Theriault.  Plaintiff, therefore, has failed to state a claim under the ADA.

### 2.    *MaineHousing defendants*

Similarly, if the law recognized a cause of action under the ADA against the individual employees or agents of MaineHousing, as discussed above, Plaintiff has not alleged any facts from which a factfinder could conclude that the individuals engaged in conduct that was motivated by a "disability-based discrimination." *Batista*, 776 F.3d at 44.  The law, however, does not recognize a cause of action under Title II against individuals.

Title II provides:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.  Although the ADA's protection is coextensive with the Fair Housing Act with respect to housing discrimination claims, *Astralis Condo. Ass'n*, 620 F.3d at 66, Title II applies only to public entities, and thus MaineHousing is the only potential Title II defendant.  Plaintiff, therefore, cannot assert an ADA claim against the individual employees and agents of

MaineHousing.  *DeCotiis v. Whittemore*, 842 F. Supp. 2d 354, 363 n.5 (D. Me. 2012); *see also* 42 U.S.C. § 12131(1) (defining "public entity").

## Conclusion

Based on the foregoing analysis, following a review of Plaintiff's complaint under 28 U.S.C. § 1915, I recommend that the Court dismiss this action without prejudice.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum within fourteen (14) days of being served with a copy thereof.  A responsive memorandum and any request shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 23rd day of October, 2015.